After about 20 years of service to Avera St. Luke's Hospital, 16 of which he was the medical director for its pathology department, the hospital ended its relationship with him when he was age 58 following his heart transplant. The issue here is just a solitary issue regarding whether or not he's considered an employee of Avera for purposes of federal and state anti-discrimination statutes so that he can fall under their protection and seek to prove his claims under the ADA and ADA and state law. In the alternative, we are asking essentially that the court reverse not just the grant of the summary judgment to the hospital but the denial of Dr. Alexander's summary judgment motion. And in the alternative, we're asking that a jury be permitted to hear the evidence. In fairness, you said the magic word, jury. Your issues two through four suggested that they all lead off, it was wrong to grant summary judgment. You seem to think that these federal claims all go to a jury. There's a paradox here because the Supreme Court in deciding an issue of law in Darden adopted a common law standard that the restatement considers permissible to a jury. But this court, with possible exception of Judge Richard Arnold's decision, has consistently said this is an issue of law. Yes. And of course, in the next poll, the confusion was it was submitted to the jury and the issue on appeal was the jury instructions. But if this went to a jury, it would be an advisory jury. You understand that? Well, I understand that under Ernst's decision that after a jury would decide it, a court would review it de novo. Well, Ernst simply pulled together a ton of Eighth Circuit cases, all of which consistent with what all the other circuits did and what the Supreme Court appeared to do in Darden despite adopting a fact-intensive test. It's an issue of law. And it has to be because we're interpreting a contract, right? Well, not just interpreting a contract. Contract interpretation is a question of law. But contract doesn't control all of the entire analysis. It's a fact-intensive question. You're arguing to this panel, overrule Ernst and every other Eighth Circuit. No, Your Honor. Our primary argument... These were cross motions for summary judgment. That's right. Our primary... Overrule on an issue of law. It is an issue of law. And our primary argument is that we should have been granted summary judgment. That is confusing and paradoxical, but I think it needs to be. It is. I needed to know where you were going with it. Yes. I concede it's a question of law, but then there also is a distinction between the federal claims and the state law claim because the Eighth Circuit's cases on federal anti-discrimination statutes don't apply to South Dakota's law. And there I would suggest they would follow the restatement, which does make it clear that unless there's a clear... Despite saying they follow federal law in applying that statute? Yes. I say despite saying that because they do ultimately follow the restatement. One of the... You know, I haven't practiced law for over 45 years, but even in my early days, the question of whether or not an employer or independent contractor was very much a litigated question. And what impressed me, very frankly, and you'll have to get around this if you can, the parties agreed in their written document that Alexander was an independent contractor. And, you know, otherwise, it's a typical kind of a case you get as to how far they went and was there enough control or not enough control. And so I'm disturbed about your having to overcome the agreement. And I know that agreement is not necessarily bonding, but certainly it has an effect and even a persuasive effect. Yes. It's not controlling because the parties can't contract their way around the realities, the economic realities of the situation. And I would suggest that the reality here is that Dr. Alexander was the equivalent of an in-house counsel. He was running the department, the pathology department, one of the primary departments of this hospital for 16 years. I mean, they can't contract around. Businesses choose to have work done by employees versus independent contractors all the time. And frequently it's to avoid unions or for other purposes that perhaps 50-plus percent of the people would consider unfair or even evil. So this notion that you can't contract around, I agree it's not controlling, the cases all say that. But this notion that you can't contract around your federal statutory obligations, no. If Congress says the statute only applies to employees, even if the employer takes this as an out, it clearly was an out for tax purposes. Are we saying does the IRS have a complaint because it gets less self-employment tax from an independent contractor than it does from the tax paid by an employer plus the employee? I mean, that's... Right. And of course that's not the issue here. But the issue is, and under the law you look at all these different factors, it's not just that they say that this is what it was. And it's not just that Avera believed he was an independent contractor. It's whether he should be treated as an independent contractor under these anti-discrimination statutes. And when you look at all the factors, essentially this is a department of a hospital that he's running. And the testimony from the Avera administration, in fact the reason he was terminated, given, is that he was no longer an effective leader of Avera. And the testimony, the concession from the president of Avera was that the only difference between how the current pathologists are, who are conceded to be employees, the only difference he could discern between them and Dr. Burt and Dr. Alexander was the W-2 treatment. I mean, that's all he could come up with. Now, looking at all the factors... His wife didn't matter? Well, he was permitted to hire his wife as an assistant. But all of the other... The fact that the employment contract just said that you do what we tell you to do and his contract laid out specific responsibilities? His contract laid out specific responsibilities. Does it matter to your expert? I don't think it matters because under the fact that things are... It sounds like he weighed the factors. Well... It sounds like he just reached a result. That's true, but it was a concession from the president of the defendant. I think it's important to... Just because something is covered by a contract, I don't think excludes it from the Darden analysis. Now, it's true that all of his various activities, most of them that he was required to do, were mentioned in his contract. But the fact that he has comprehensive duties in his contract, I don't think alters the Darden analysis. If the effect of his contractual responsibilities is that Avera controls the manner and means of his performing his tasks, then I think that's the overriding factor. Then he can be considered and should be considered an employee under the anti-discrimination statutes. And here, he had to do essentially whatever Avera needed. I mean, his tasks were dictated by what doctors were required, by what tests needed to be done, by the administrative tasks that were required in overseeing a department. He was required to attend staff meetings. He was required to participate in reviews. He was required to participate in billing. There was really no difference. Doesn't our Sillisec case suggest that control is not as significant in this doctor-hospital relationship? Sillisec is the Fourth Circuit. Glasscock was the Eighth Circuit case. And there, it does say that it's less useful in the context of emergency room physicians. And I'm not trying to make a cutting distinction between emergency room physicians and pathologists. But there is a difference between a free agent. Someone's coming in and can work whenever they want to, can turn down shifts, or they're just kind of on call. We would like you to work this week and cover the ER. That, I understand, that's less useful in that context. But when someone is, for a decade and a half, the medical director of your main department, one of your main departments that interacts integral to most of the other departments, then I think it is a very useful determination, a very useful factor. What's the most favorable decision, Federal Circuit decision, favorable to you that involved an MD, a physician? Well, that would be the Solomon decision from the Second Circuit. Any others? Well, I think the Eighth Circuit decision most favorable to me is the Hunt decision, which involved nurses. I know, but that's why I wanted to, I saw that. Solomon seems to be the, I mean, Solomon is clearly the most favorable case to us, and Silosec is less favorable, certainly, and the Shaw case is not favorable. But following this circuit's precedent, Hunt, I think, is very useful because there, what you had, it was a temp agency that was supplying nursing, medical services, they were nurses, to a prison. So the contract, there was no dispute that the contract was with the temp agency. They were independent contractors. If you look at the documents, if they were independent contractors, if you look at tax realities or the way taxes were structured. But the reality was that the court held that they were de facto employees, sustained the fact that they were employees under these circumstances, because they had to follow all the protocols. Their work was dictated by what the doctors assigned to them, which is equivalent to what Dr. Alexander's work was dictated by what the hospital needed. They had to... Wasn't it dictated by what other physicians asked them to do in connection with their surgery? That's true, yes. All the employees and all the staff of the hospital. And that was his job. He was the hospital's director for performing all of these services and administrated the department as well. He also, in Hunt, not only the tools in the workplace were supplied, and that's obvious, but there was discipline that was imposed, and the nurses there were required. That was one of the factors, is that they were required to submit to discipline. And here, when Dr. Alexander got into a dispute with Dr. Burt, there were mediation procedures insisted upon that he perform. And it was at the expense of his job. I think his job was threatened. Both sides think that's favorable. Yeah. I'm persuaded that it favors us, because it shows control. I'm not sure how it cuts. If both sides could see it as an employee or a contractor, maybe it's neutral. And there are these different ways to interpret the facts, and that leads me to think that properly, when there are conflicting inferences, that it should be a jury question, but I understand this court's law. The overriding factor, we suggest, is control over the method and means of how he did his job, other than exercising his own independent medical judgment, which every employed physician does as well, and nurses do, as the court recognized in Hunt. They controlled how, when, where everything was done. And the work that he got was assigned to him by the hospital. And I'll reserve a little time for rebuttal. Thank you. Mr. Rasmussen. Thank you, Your Honor. May it please the Court. Obviously, there's no issue in this case. The primary question is whether Dr. Alexander was an employee. The pathologists that are now working at Avera St. Luke's. I'm sorry, Your Honor. I think what we have in this case, which is very helpful, is we can contrast the situation between Dr. Alexander and the pathologists who are now working there, who are undeniably employees. There are so many factors that show that the hospital is treating the current pathologists differently than they treated Dr. Alexander. And that is a factor that we have in this case that you don't always have. Obviously, we have the withholding. There's no Social Security taxes or anything else withheld from Dr. Alexander. Tax treatment through the years, Alexander gets a 1099. The employed pathologist gets a W-2. Alexander paid estimated taxes. Employed pathologists don't do that. Substantial benefits for the employed pathologists, all kinds of insurance and retirement. Alexander got none of those things over the entire time he was there. Every contract he entered into specifically said he was an independent contractor and he was not going to get any of the typical benefits that an employee would get. Malpractice coverage was provided for the employed pathologist. It's not for Dr. Alexander. Restrictions on practice. The employed pathologists can only work at St. Luke's unless they get specific permission to do something otherwise. No such provision in Dr. Alexander's contract. In fact, for a number of years he had another job. He was the medical director of the South Dakota. He was contractually obligated to provide 1,352 hours a year of supervisory or administrative to the hospital. Originally he was, but that was removed in 2002. And the 2002 contract and the 2008 contract had no such provision. In the contract that was in existence when it was eventually terminated, there was no provision like that whatsoever. Did he change when that provision came out of the contract? No. Primarily the remainder of the contract, there were slight differences, but the contract, the 2002 contract didn't change much from the prior contract except for the fact that that requirement that he work a certain number of hours was taken out. And so there was absolutely no hourly requirements in the contract that existed at the time of the termination. The employed pathologists have a non-compete agreement. If they leave, they can't work within, I think it's 50 miles of Aberdeen for two years. No such provision in Dr. Alexander's contract. In fact, Dr. Burt, when he left St. Luke's, went across town and worked at the competing hospital. Licensure was paid for for the employed pathologists, not for Dr. Alexander. Dr. Alexander in his contract had a provision if he was gone for more than 35 days, for whatever reason, vacation, illness, any reason whatsoever, he had to just hire somebody else to replace him. The employed pathologists have no such provision in theirs. Employed pathologists got loans, moving expenses. There was a reference earlier to Dr. Alexander hiring his wife. Dr. Burt did the same thing, hired an assistant. All that is covered with the employed pathologists. It's all St. Luke's employees that take care of things. Dr. Alexander required to indemnify the hospital for any negligence. Employed pathologists obviously don't have to do that. The employed pathologists can't invest in another hospital or a surgery center. Dr. Alexander had no such restrictions. Did the district court go over all those items and have all those items in the record? The district court had all that information available to him. He didn't cite all of this stuff in his opinion. I think he referenced some of it. He didn't make specific reference to everything. By the way, where is this hospital? Is it in Aberdeen or where? In Aberdeen, yes. Importantly, St. Luke's did not exercise control over Dr. Alexander's practice of medicine. He was required to comply with the hospital bylaws just as any physician is. Under the argument set forth in the plaintiff's brief, just because he had to comply with the rules, they say that that makes him an employee. Well, that would make any doctor with privileges at any hospital an employee, and clearly that's not the case. We have a denoble review here, is that right? That's right, Your Honor. Dr. Alexander was not supervised by anyone. He was not required to report to anyone. His contract specifically set forth what his duties were, unlike the employed pathologists, and he acknowledged in his deposition testimony that he was never assigned any additional projects beyond what was specifically set forth in the contract. That's obviously one of the factors in Darden. And Dr. Alexander admitted he knew he was an independent contractor. The contracts say that, and he acknowledged that he knew that. He acknowledged that he knew that employees would have withholding and that sort of thing. And, in fact, at one point in time, he and Dr. Burt approached administration and asked if they could become employees. And so, clearly, he knew he was an independent contractor, and that's certainly a significant factor. What year did that? I don't think the year was ever established. Dr. Alexander testified that that conversation occurred at some point in time, and I don't believe he remembered exactly when it occurred. When was he terminated? Well, the contract was terminated in 2011. Although the plaintiffs acknowledge that Glasscock is one of the four most relevant cases here, they don't really attempt to distinguish it. Glasscock goes through all the Darden factors and is clearly supportive of our position, as is the Silichuk case, which Glasscock relies upon. Plaintiffs' counsel acknowledge that they feel their strongest case is the Solomon case out of the Second Circuit, and that's an entirely different situation. Frankly, I don't know that this circuit or a lot of other circuits would have necessarily decided the case the way the Second Circuit did, but that's a case where the doctor was under virtually constant supervision. She was being told how to practice her specialty, when to do examinations, how to do examinations because of some perceived problems with her. I believe she was a gastroenterologist, if I remember correctly. And because of problems they'd had, they were under some sort of program with her where she was strictly supervised in what she could do, a totally different situation than what we have here. And so the Solomon case is just not really relevant at all. And likewise, the Hunt case that was referenced, that's nurses. The opinion indicates that they were constantly under supervision and scrutiny of DOC officials and employees. Again, a different type of situation than we have in this case, where Dr. Alexander was the head of the pathology department, and he had free reign to run it as he wanted to, provided that he did what he was asked to do in the contract and complied with the hospital rules and regulations. Other than either he or Dr. Burt being there for surgery, they were free to come and go as they pleased. Nobody from the hospital told him he had to be there at 8 o'clock in the morning or that he couldn't go on vacation. If he and Dr. Burt worked it out amongst themselves and they set their schedule, they had total control over that situation. There's reference to the discipline issue, and I think we do believe that supports our position in this case. If that would have been an employed physician, the hospital administration would have been the one. Human resources probably would have dealt with the situation. But here it was the medical staff that is in charge of all the doctors that practice in the hospital. They're the ones that impose the discipline, require Dr. Burt and Dr. Alexander to go to counseling. The counseling was paid for by the medical staff, not by the hospital. And so it was a medical staff issue, not a hospital administration or human resources issue. I'm a little concerned about the district court's almost casual dismissal of the state law claim with a passing reference to Title VII. These aren't Title VII federal claims. All these federal statutes get a little different treatment. Is there anything in South Dakota law where the state court has applied the analogous state law to these claims? I don't believe so, Your Honor. I think similar to Glasscock, where there was a claim under the Iowa Civil Rights Statute or in the Bertram case, which involved North Dakota, in both those cases when the federal case was dismissed, the state court was likewise dismissed. But South Dakota law uses the restatement. In my view, I believe the South Dakota Supreme Court would define employee exactly the way it has been defined by this court and by the other federal circuits. Well, if they use the restatement, then an additional analysis is required, whether the Darden factors here on this record produce a submissible issue. I don't believe. I mean, the restatement is part of the analysis, just like it is in this court. And Glasscock cites or Silichek cites the restatement. But the restatement comments make it very clear that the ALI people thought they were drafting for a jury issue. Well, I understand that. But the federal circuits that have cited the restatement with these issues haven't. That's because the Supreme Court left us in that box. Right. But the state Supreme Court applying state law is not driven by that paradox. They can decide the restatement is the correct substantive test. And for our statute, it should be a jury issue. And as an eerie court, we've got to worry about that, don't we? Well, I don't think the district court did. The district didn't specifically spend a lot of time addressing that issue. I agree. And I guess similarly, this court didn't spend a lot of time addressing that issue in Glasscock or in Bircham either. But I believe that if you look, there's nothing in South Dakota law that I believe would indicate that this would be a jury issue. It's still a matter that can be cited as a question of law. And even if it wasn't, even if the facts in this case are overwhelming, that Dr. Alexander was not an employee, there's no material issues in dispute. The parties essentially agree to all the facts. The factors that I've referenced here earlier are all pretty much undisputed. And I think the court can look at that, and whether you're doing it under the restatement or otherwise, it's still a case that's proper for summary judgment on that issue. When you come right down to it, it was a business decision on the part of Avera St. Luke's to terminate this contract. They had every right to do that. They gave the proper notification. And Dr. Alexander, under that contract, was an independent contractor. He was not an employee. And we believe the district court properly granted summary judgment in this case. I wanted to ask you a side question. You're Segal and Barnett. I used to know them, but Mr. Segal is dead. Yes. And Barnett still practicing? No, he's deceased also. Okay. So you still got the name, but not the people. And we have Segal, Barnett, and Schutz, and they're all deceased. They should make it Rasmussen and Associates, but they haven't done that yet. Okay. All right. Thank you. They were both very good lawyers, appeared in front of us, and good friends, too. Thank you, Judge. If there's no further questions, I believe that's all I have. Thank you. Counsel, does Mr. Parsons have some time? He has two minutes. Thank you, Your Honor. Judge Bright, Mr. Segal's son is one of my law partners, so I'll pass on his good words. I remember, didn't he clerk for Judge Lay? I think he did, yes. I remember that. So he's out in your neck of the woods. Yes. Out in, where is it? Sioux Falls. And you're in Sioux Falls. Yes. Okay. I don't know where these old people are, and they aren't so old anymore. The main point, I think, here, if we can crystallize the issue, there's an admission here that the medical director of the pathology department, Dr. Alexander, who was labeled an independent contractor, and the medical director of the pathology department now, they perform their jobs in exactly the same manner, and AVERA has exactly the same control over the manner and means of how they do it. The difference is their tax status, their benefits, and that type of thing. The difference is on paper. But if you're looking at the fact, the essence, the manner and means, that is the same, whether it's an employer or a contractor here, or whether they're called an employer or called a contractor. And so I think that's essentially conceded, and that was the argument that Mr. Rasmussen made. His distinguishments are how he was treated tax-wise and how he was treated with benefits and how he had access to insurance and that type of thing. The economic reality here is that Dr. Alexander was part of the leadership, much more a part of AVERA Hospital than the nurses were part of the DOC in Hunt. He was part of their leadership. He was terminated because, they say, he was not an effective leader of AVERA Hospital, and I think that's important. And I also do want to just emphasize that under the restatement, which South Dakota follows, unless there's a clear inference, it is a question of fact for the jury. Thank you, counsel. The case has been well-briefed and argued, and I have seen these issues before, and both of you have focused exactly on what strikes me as ill-willed, and under your advisement, we'll do our best.